UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS            Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Melissa Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:
        Not Present                                          Not Present

**PROCEEDINGS:**    **(IN CHAMBERS) ORDER GRANTING DEFENDANT's MOTION TO FOR JUDGMENT ON THE PLEADINGS (Doc. 33)**

      Before the Court is a Motion for Judgment on the Pleadings filed by Defendant Zurich American Insurance ("Zurich"). (Mot., Doc. 33.) Plaintiff opposed, and Defendant replied. (Opp., Doc. 55; Reply, Doc. 57.) Having heard oral argument, considered the parties' briefs, and for the reasons below, the Court GRANTS the Motion WITH LEAVE TO AMEND.

     **I.**     **BACKGROUND**

       **A. General Background**

      Plaintiff In-N-Out Burgers ("In-N-Out") is a chain of restaurants with its principal place of business in Irvine, California. (First Amended Complaint ("FAC"), Doc. 8, ¶ 3.) It operates approximately 350 locations in California, Arizona, Nevada, Utah, Oregon, and Texas. (FAC ¶ 8.) In-N-Out alleges that it has suffered economic losses as a result of the SARS-CoV-2 virus and resulting ongoing COVID-19 pandemic.
      The FAC includes factual allegations about how the COVID-19 virus is generally transmitted, averring that: "While infected droplets and particles carrying COVID-19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

may not be visible to the naked eye, they are physical objects which travel to other objects and cause harm. Habitable surfaces on which COVID-19 has been shown to survive include, but are not limited to, stainless steel, plastic, wood, paper, glass, ceramic, cardboard, and cloth." (FAC ¶ 23; *see also* FAC ¶¶ 13-26.) In support, the FAC incorporates various scientific articles, including, for example, an explanation from the World Health Organization's website, which states, in part, that "the disease spreads primarily from person to person through small droplets from the nose or mouth, which are expelled when a person with COVID-19 coughs, sneezes, or speaks." (*Id.* ¶ 17.) The FAC also references an article in the New England Journal of Medicine, which reported that COVID-19 persisted for up to 72 hours on plastic and stainless steel in tests. (*Id.* ¶ 17.) In-N-Out states that "[v]irtually every county where an In-N-Out restaurant is located has reported COVID-19 infections," and that, at the time of filing, In-N-Out was informed that "more than 30 of its associates [had] been diagnosed with COVID-19." (*Id.* ¶ 26.)

The FAC also points to the Stay-at-Home Orders ("Orders" or "Stay-at-Home Orders") that various state and local governments issued in an effort to slow the spread of the virus. (FAC ¶¶ 28-40.) Those Orders generally limited in-person activities at businesses deemed to be "non-essential" and required all restaurants and other establishments that serve food to close dining rooms for a period of time. (*Id.*) The Orders did not restrict In-N-Out's drive-thru or take-out services. (*Id.* ¶31, referencing the March 19, 2020 City of Los Angeles "Safer at Home" order and ¶35, referencing the March 16, 2020 City and County of San Francisco "Order of the Health Officer No. C19-07.") However, the Orders mandated that the dining rooms of In-N-Out's locations be closed. (FAC ¶ 40.)

In-N-Out alleges that "[t]he novel coronavirus has caused 'direct physical loss of or damage to' In-N-Out property" that is covered by its insurance policy with Defendant Zurich American Insurance ("Zurich"). (FAC ¶ 48.) Specifically, In-N-Out contends that as a non-essential business, it was required to comply with the Orders, and, therefore, was forced to close all of its restaurant dining rooms. (FAC ¶¶40-41.) In-N-Out alleges

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS                          Date: July 07, 2021

Title: In-N-Out Burgers v. Zurich American Insurance Company

that, as of the time of filing, it was still not fully able to resume normal operations at many of its locations and that it has suffered significant losses from the closures of its dining rooms. (*Id.* ¶41.)

Zurich denied insurance coverage on the grounds that In-N-Out had not stated a claim for direct physical loss of or damage to property under the Policy. (*Id.* ¶¶61, 63-65.) On May 29, 2020, In-N-Out Burgers filed the present action. The First Amended Complaint ("FAC") asserts three claims against Zurich, alleging (1) breach of the Policy, (2) declaratory judgment that In-N-Out's losses are covered by the Policy, and (3) breach of the covenant of good faith and fair dealing. (*See generally* FAC, Doc. 8.)

**B. The Zurich Policy**

At issue in this action is an insurance policy, effective from June 1, 2019 to June 1, 2020 that Zurich issued to In-N-Out. (Ex. C to Klevens Decl., Doc. 33-1, the "Policy").[1] The Policy provides coverage for "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property," with "Covered Cause of Loss" defined as "[a]ll risks of direct *physical loss of or damage from* any cause unless excluded." (Policy, §1.01)(emphasis added).

In-N-Out also relies on the Policy's "Time Element Coverage," alleging that the closure of its dining rooms in compliance with the Orders resulted in a substantial Time Element loss of its "gross earnings" as insured under the Policy. (FAC ¶ 57.) In-N-Out also relies on the Policy's "Special Coverages." (*Id.* ¶¶ 58-60.)

---

[1] Zurich requests judicial notice of the Policy. (Doc. 34.) The incorporation by reference doctrine allows a court to consider, on a motion limited to the pleadings, documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal citations omitted). The request for judicial notice is therefore GRANTED as to the Policy because the FAC incorporates it by reference and In-N-Out does not object to it being judicially noticed. However, both parties also request judicial notice of records and/or decisions in other proceedings. (Docs. 34, 55-4.) Those requests are DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS                          Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

    The provisions on which In-N-Out relies limit coverage to situations involving "direct physical loss of or damage to" property. Specifically, the Policy's Time Element provision states:

> The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary Suspension of the Insured's business activities at an Insured Location. The Suspension must be due to *direct physical loss of or damage to* Property (of the type insurable under this Policy other than Finished Stock) caused by a Covered Cause of Loss at the Location…
> (Policy, §4.01.01)(emphasis added).

    Each of the Special Coverages requires direct physical loss of or damage to third party property:

> CIVIL OR MILITARY AUTHORITY
> The Company will pay for the Actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension is caused by order of a civil or military authority that prohibits access to the Location. That order must result from a civil authority's response to a direct physical loss of or damage caused by a Covered Cause of Loss to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations.
> (Policy §5.02.03.)

> CONTINGENT TIME ELEMENT
> The Policy covers the actual Time Element Loss as provided by the Policy, sustained by the Insured during the Period of Liability directly resulting from the necessary Suspension of the Insured's business activities at an Insured Location if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS                        Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

> the Suspension results from direct physical loss of or damage caused by a Covered Cause of Loss to property (of the type insurable under this Policy) at Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations and Attraction Properties…
> (Id. at §5.02.05.)
>
> DECONTAMINATION COSTS
> If Covered Property is Contaminated from direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property and there is in force at the time of the loss any law or ordinance regulating Contamination due to the actual not suspected presence of Contaminant(s), then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such Contaminated Covered Property in a manner to satisfy such law or ordinance...
> (*Id.* §5.02.07.)

Zurich moves for judgment on the pleadings on all three of In-N-Out's contract-related claims, arguing that they fail because In-N-Out has not alleged any "physical loss of or damage to" property and has therefore failed to allege it suffered any loss covered by the Policy. (*See generally* Mot.)

## II. LEGAL STANDARD

### A. Rule 12(c) Standard

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "functionally identical" to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); therefore, the same legal standard applies to both motions. *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989). In deciding a motion under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS                            Date: July 07, 2021

Title: In-N-Out Burgers v. Zurich American Insurance Company

complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Courts must also draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Yet, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a motion to dismiss or for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A plaintiff must not merely allege conduct that is conceivable. When "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

### B. Insurance Contract Interpretation

Under California law, the interpretation of an insurance contract is a question of law for the courts. *See Waller v. Truck Ins. Exch., Inc*., 11 Cal. 4th 1, 18 (1995). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "An insurance policy should be enforced as written when its terms are clear." *Palmer v. Truck Ins. Exch*., 21 Cal.4th 1109, 1115 (1999). "Only if this rule does not resolve the ambiguity do [courts] then resolve it against the insurer." *Bank of the W*., 2 Cal. 4th at 1265. Courts should not "strain to create an ambiguity where none exists." *Ray v. Valley Forge Ins. Co*., 77 Cal.App.4th 1039, 1044 (1999), as modified (Jan. 27, 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS　　　　　　　　　　　　　Date: July 07, 2021

Title: In-N-Out Burgers v. Zurich American Insurance Company

"Before considering whether any policy exclusions apply, the Court must first determine whether affirmative coverage exists at all." *Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, --- F.Supp.3d ----, 2021 WL 234355, at *4 (C.D. Cal. Jan. 20, 2021) (citing *Rosen v. Nations Title Ins. Co.,* 56 Cal. App. 4th 1489, 1497 (1997).) "[T]he burden is on the insured to bring the claim within the basic scope of coverage[.]" *Id.* (internal quotation marks and citation omitted).

### III.　DISCUSSION

#### A. Pleading Coverage Under the Policy

For the reasons stated below, In-N-Out fails to plead that it suffered a loss that is covered (1) under the Policy's "Insuring Agreement" and the "Time Element" or (2) under any of the Policy's "Special Coverages."

##### 1. "Insuring Agreement"/ "Time Element" - Direct Physical Loss

As noted above, the Policy's general "Insuring Agreement" insures against "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property," with "Covered Cause of Loss" defined as "[a]ll risks of direct physical loss of or damage from any cause unless excluded." (Policy §1.01; §7.11.) Similarly, the Time Element Coverage covers the suspension of business due to direct physical loss of or damage to insured property. (Policy, § 4.01.01.).

Zurich argues that "physical loss or damage" to the property "requires that a substance so permeates an insured property that it compromises its physical integrity or renders the entire structure uninhabitable." (Mot. at 8.) Zurich reasons that In-N-Out has failed to plead any loss covered by the Policy because neither the COVID-19 pandemic nor the Stay-at-Home Orders caused a "physical loss or damage to" property within the Policy's meaning. (Mot. at 8.) In support, Zurich relies on *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm General Insurance Company*, 187 Cal. App. 4th 766, 779

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS                        Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

(2010). There, the California Court of Appeal explained that "physical loss or damage" exists "when an item of tangible property has been 'physically altered' by perils such as fire or water." *MRI Healthcare*, 187 Cal. App. 4th at 778-79. The Court of Appeal noted that misunderstandings can arise "in instances when the structure of the property itself is unchanged to the naked eye and the insured claims its usefulness for its normal purposes has been destroyed or reduced." *Id.* at 779. Nonetheless, the *MRI Healthcare* court held that the requirement "[t]hat the loss needs to be 'physical,' given the ordinary meaning of the term, is 'widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Id.* Zurich contends that the holding of *MRI Healthcare* is clear and applicable here: "[f]or loss to be covered, there must be a 'distinct, demonstrable, physical alteration' of the property." (Reply at 4 (citing *MRI Healthcare*, 187 Cal. App. 4th at 778-79).)

      In opposition, In-N-Out disputes Zurich's contention that "physical loss of" property requires that the physical integrity of the structure be compromised or for the structure to be uninhabitable. In-N-Out reasons that the Policy language at issue here—"physical loss *of*" property—is broader than the policy language that was before the *MRI Healthcare* court, which covered only "physical loss *to* personal business property." (Opp. at 21.) In-N-Out further argues that the disjunctive "or" signals that "loss of" and "damage to" property must be two distinct concepts. That is, In-N-Out avers, if "physical loss" required "physical damage," then one term or the other would be superfluous. (Opp. at 15.) According to In-N-Out: "The waves of coronavirus and COVID-19 that have broken upon our shores are external, fortuitous perils. They have resulted in, among other things, a 'loss of' In-N-Out's in-restaurant dining rooms and also damage to In-N-Out's property. Each of these independently is a 'physical loss of or damage to' property." (Opp. at 7.)

      In-N-Out relies, in part, on *Total Intermodal Services Inc. v. Travelers Property Casualty Company of America*, No. CV 17-04908 AB (KSX), 2018 WL 3829767, at *2,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS                                   Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

4 (C.D. Cal. July 11, 2018). (Opp. at 8.) There, Travelers denied plaintiff's claim for cargo mistakenly returned to China and, in the ensuing lawsuit, relied on *MRI Healthcare* to argue that "direct physical loss of" property requires some damage or alteration to the property. The court disagreed, noting that "the 'loss of' property contemplates that the property is misplaced and unrecoverable, without regard to whether it was damaged." *Id.* at *3. The court further reasoned that "to interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating a black-letter cannon of contract interpretation—that every word be given a meaning." *Id.* (citing Cal. Civ. Code § 1641). Thus, as In-N-Out points out, the *Total Intermodal* court concluded that "physical loss of" property does not require a physical alteration. Less helpful to In-N-Out, however, is the *Total Intermodal* court's conclusion that plaintiff had pleaded "loss of" property by pleading "the permanent dispossession of something." *Id.* at *4.

Instructive here is *Mudpie, Inc.* a decision that grappled with both *MRI Healthcare* and *Total Intermodal* in the context of an insured seeking coverage for COVID-19-related losses under a policy that covered losses resulting from "physical loss of or damages to" property. *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, 487 F. Supp. 3d 834, 839–40 (N.D. Cal. 2020). Relying on *Total Intermodal*'s reasoning, the *Mudpie* court concluded that, unlike the "physical loss of personal business property" language in *MRI Healthcare*, the phrase "physical loss of" does not require a "physical alteration of the property" or "a physical change in the condition of the property." *Id*. However, the court went on to state that "the facts at hand [did] not fall within the *Total Intermodal* court's more expansive interpretation of 'direct physical loss of property.'" *Mudpie, Inc.*, 487 F. Supp. 3d at 839. The court reasoned: "Although Mudpie [was] dispossessed of its storefront [due to the COVID-19 pandemic], it [would] not be a 'permanent dispossession' as with the lost cargo in *Total Intermodal*. When the Stay at Home orders are lifted, Mudpie can regain possession of its storefront. Mudpie's physical storefront has not been 'misplaced' or become 'unrecoverable,' and neither has its inventory." *Id.* at 839-40. The *Mudpie* court also distinguished the non-California

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS  Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

cases cited by plaintiff, stating that "each of these cases involved an intervening physical force which 'made the premises uninhabitable or entirely unusable.'" *Id.* at 840. Mudpie did not "claim[] that the presence of the COVID-19 virus inside [its] establishments made them unusable," nor "allege . . . that the presence of the COVID-19 virus in its store created a physical loss"; therefore, the court concluded that it had failed to plead that it was entitled to coverage under the policy. *Id.* at 842-43.

Also on point is *Pez Seafood DTLA, LLC v. Travelers Indem. Co*., 2021 WL 234355, at *4 (C.D. Cal. Jan. 20, 2021), a decision by another court in this District, which held that "in order for a loss of functionality to constitute a 'direct physical loss,' there must be a nexus between the loss and a physical change or effect on or near the premises." *Pez Seafood DTLA, LLC v. Travelers Indem. Co*., 2021 WL 234355, at *4 (C.D. Cal. Jan. 20, 2021)(reconciling *Studio 417, Inc. v. The Cincinnati Insurance Co*., 478 F.Supp.3d 794 (W.D. Mo. 2020) and *Rose's 1 LLC v. Erie Ins. Exch*., No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020)). The *Pez Seafood* court concluded that plaintiff had not pleaded "direct physical loss" under the Policy because "[p]laintiff [did] not allege that COVID-19 [had] entered or attached to the insured property." *Id.* at *5. The court observed, however, "the COVID-19 virus physically attaching to or entering the insured property would constitute a 'direct physical loss,' whereas preventative measures enacted without the virus having actually been inside or upon the premises would not." *Id.* at *5; *accord Mudpie, Inc*., 487 F. Supp. 3d at 842 n.7 (noting that "[h]ad [Plaintiff] alleged the presence of COVID-19 in its store, the Court's conclusion about an intervening physical force would be different.").

This Court is in agreement with the *Mudpie* and *Pez Seafood* decisions that "direct physical loss" under the Policy requires "a physical change or effect on or near the premises," *Pez Seafood DTLA, LLC*, 2021 WL 234355, at *4, or "an intervening physical force which 'made the premises uninhabitable or entirely unusable.'" *Mudpie, Inc*., 487 F. Supp. 3d at 840. "Physical loss of" property unequivocally requires a nexus between the loss and a physical change or effect on or near the premises. *See Pez Seafood DTLA, LLC,* 2021 WL 234355, at *4. And wherever we set the bar for pleading a "physical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS                                  Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

change or effect," or "an intervening physical force" that led to dispossession, the FAC fails to clear it here.

As an initial matter, the FAC does not allege how the Stay-at-Home Orders led to any physical change or effect or to any physical dispossession of property. The Orders "temporarily restricted Plaintiff's use of the Property, but they did not physically alter the [restaurants] or permanently take the Property from Plaintiff." *Accord Madera Grp., LLC v. Mitsui Sumitomo Ins. USA, Inc.*, No. 2021 WL 2658498, at *9 (C.D. Cal. June 25, 2021). Accordingly, the FAC does not allege that the Stay-at-Home Orders caused "direct physical loss of or damage to property."

As to whether the COVID-19 virus itself triggers coverage, the FAC states in conclusory fashion that In-N-Out was forced to close all of its restaurant dining rooms not just because of the Stay-at-Home Orders but also because of "the property damage caused by the novel coronavirus." (FAC ¶ 41.) But the FAC pleads no *facts* about how the COVID-19 virus damaged, or even affected, In-N-Out's property. Moreover, as discussed above, the FAC pleads only that the COVID-19 virus generally spreads through droplets and lingers on surfaces (FAC ¶¶ 13-26); it does not allege facts about the presence of the COVID-19 virus in the insured properties, let alone facts about how the virus physically affected the property. Indeed, the FAC contains only one allegation about how the COVID-19 virus has directly affected In-N-Out, stating that "[v]irtually every county where an In-N-Out restaurant is located has reported COVID-19 infections," and that, at the time of filing, In-N-Out was informed that "more than 30 of its associates [had] been diagnosed with COVID-19." (FAC ¶ 26.) These are allegations about how the virus affected In-N-Out's employees, not its restaurants, and do not enable the Court to plausibly infer that In-N-Out suffered a "*physical* loss of property." In sum, In-N-Out has failed to plead a direct physical loss and Zurich is entitled to a motion for judgment on the pleadings.

Despite the dicta in *Pez Seafood* and *Mudpie* courts, this Court is not convinced that "the COVID-19 virus physically attaching to or entering the insured property would constitute a 'direct physical loss.'" *Pez Seafood DTLA, LLC*, 2021 WL 234355, at *5;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS                            Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

*accord Mudpie, Inc*., 487 F. Supp. 3d at 842 n.7. That is, it is difficult to imagine a set of factual allegations from which the Court could plausibly infer that the COVID-19 virus led to a "physical change or effect" in In-N-Out's restaurants or that the virus was "an intervening physical force" that *caused* the closure of In-N-Out's restaurants. But that issue is not before the Court now. Rather than speculate about the sufficiency of the allegations in any amended pleading In-N-Out might file,[2] and consistent with Rule 15's liberal amendment policy, the Court concludes that leave to amend is appropriate. *See Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (indicating that the Rule 15(a)(2) policy is to be applied with "extreme liberality").

    **2. Special Coverages**

The FAC also relies on the Policy's "Special Coverages." (FAC ¶ 51.) As set forth in Section II, *supra*, the Special Coverages all contain language limiting coverage to situations involving "direct physical loss of or damage to" In-N-Out's property or the property of certain third parties. Above, the Court held that "direct physical loss" requires a nexus between the property and a physical effect, and that In-N-Out has failed to plead any "direct physical loss" or "damage" that would trigger coverage under the Policy's general Insuring Agreement and the Time Element Coverage. Accordingly, much of the Court's analysis in the preceding section applies with equal force to In-N-Out's attempt to plead a claim under the Policy's Special Coverages.

Specifically, under the "Civil or Military Authority Coverage" provision, coverage is triggered when an insured's business is suspended due to a civil order and that civil order is in response to direct physical loss or damage caused by a covered cause of loss to third-party property. (Policy §5.02.03.) In-N-Out's conclusory assertion that "state and local governments issued orders closing In-N-Out's dining rooms in order to control

---

[2] In-N-Out, in its briefing, points to the complaint in another matter filed before this Court in support of the proposition that it has sufficiently pleaded physical damage to property as a result of COVID-19. (*See, e.g*., Opp. at 15.) As stated at the hearing, only the sufficiency of the FAC in this matter is at issue and the Court will not look to the related pleading here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS                                              Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

spread of the virus and specifically because the virus is causing property loss or damage everywhere, including many places within one mile of In-N-Out locations" does not plausibly state a viable claim under the Civil Authority Coverage provision. (FAC ¶52.) Again, In-N-Out has failed to plead any *facts* about how "the virus is causing property loss or damage everywhere." (*Id*.)

The FAC's reliance on the Policy's other Special Coverages is similarly unsuccessful. The "Contingent Time Element Coverage" applies where a policyholder must suspend its business activities, provided that the "Suspension results from direct physical loss of or damage… to property (of the type insurable under this Policy) at [certain third-party locations]." (Policy, § 5.02.05.) The "Decontamination Costs Coverage" is designed to cover costs for decontamination and/or removal of Contaminated Covered Property in a manner required to satisfy a law or ordinance, resulting from "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property." (Policy §§ 5.02.07, 7.10.) The FAC also refers, in passing, to the Policy's "Ingress/Egress Coverage." That provision requires "direct physical loss or damage" to a relevant third-party location and a resultant "physical obstruction" that prevented access to an insured location. (Policy § 5.02.15.)

In-N-Out has not identified any third-party properties that allegedly sustained physical loss or damage. The COVID-19 pandemic and the resulting Stay-at-Home Orders are the only external forces identified in the FAC; therefore, the Court cannot plausibly infer that nearby properties sustained any direct physical loss or damage within the meaning of the Policy. In sum, as above, In-N-Out has not pleaded any "nexus between [its alleged] loss and a physical change or effect on or near the premises," and its failure to do so is equally fatal to its claim under the Policy's Special Coverages as it was to its claim under the general Insuring Agreement and Time Element Coverage. *Pez Seafood DTLA, LLC v. Travelers Indem. Co*., 2021 WL 234355, at *4 (C.D. Cal. Jan. 20, 2021). For the same reasons stated above, however, the Court grants In-N-Out leave to amend the pleadings to allege a loss under the Special Coverages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01000-JLS-ADS　　　　　　　　　　　　Date: July 07, 2021
Title: In-N-Out Burgers v. Zurich American Insurance Company

### B. Dismissal of all Claims

For the reasons stated above, In-N-Out has not alleged that it is entitled to coverage under the Policy and, as such, the FAC's first claim for breach of contract fails. For the same reasons, In-N-Out has failed sufficiently to plead entitlement to declaratory relief, and the FAC's second claim relief also fails.

The FAC's third claim for relief for breach of the implied covenant of good faith and fair dealing similarly "rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal.App.4th 1026, 1031 (1992). "[T]he implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." *Id.* at 1032. Because In-N-Out has failed to allege a covered loss under the Policy, the FAC's final claim against Zurich also fails.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Defendant's Motion. Plaintiff is GRANTED LEAVE TO AMEND the pleading. Plaintiff may not add claims or new defendants to their pleading. Any amended complaint shall be filed within **twenty-one (21) days** of the date of this Order. Failure to timely file an amended complaint will result in the dismissal of this action and closing of the case without further notice.

　　　　　　　　　　　　　　　　　　　　　　　　Initials of Deputy Clerk: mku